UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, | ) ) ) |
| Plaintiff | ) ) |
| vs. | ) Case No. 3:15-cv-00780-HGD ) |
| MAPLE GARNER, et al., | ) ) |
| Defendants | ) |

# MEMORANDUM OPINION

This matter is before the undersigned United States Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c). For consideration is the Motion for Summary Judgment filed by plaintiff, The Travelers Home and Marine Insurance Company (Travelers). (Doc. 27).

Plaintiff initiated this proceeding by filing a Petition for Declaratory Judgment. (Doc. 1). It seeks a declaration regarding its duty to defend or indemnify Defendant Maple Garner under a homeowner's insurance policy. Travelers issued a homeowner's insurance policy to defendant Maple Garner bearing policy number 985827312 633 1, for the policy period of November 29, 2013, to November 29, 2014 (the "Homeowners Policy").

On September 12, 2014, defendants J.F. and Brandy Frost filed a lawsuit in the Circuit Court of Lauderdale County, Alabama, styled *J.F., a minor, by and through her Mother and Next Friend, Brandy Frost v. Maple Garner, Individually and d/b/a 1 Step At A Time Daycare, et al.*, CV-2014-900413. (*See* Doc. 1 at Ex. B, Lauderdale County Complaint). Defendants J.F. and Brandy Frost allege that defendant Garner operated a daycare center doing business as 1 Step At A Time Daycare in Florence, Alabama. (Ex. B, ¶ 2). They allege that on September 2, 2014, Garner transported J.F. by vehicle from the premises of the daycare center to Garner's private residence located in Florence, Alabama. (*Id.*, ¶ 7). They further allege that, while unsupervised at Garner's residence, J.F. was knocked to the ground and bitten several times by a 73-pound dog that was located at Garner's residence. (*Id.*, ¶¶ 9-10).

In their complaint, J.F. and Brandy Frost assert claims against Garner individually and d/b/a 1 Step At A Time Daycare for negligence, wantonness and negligence *per se*. They have demanded the policy limit of $100,000 to resolve the claims asserted against Garner individually and d/b/a 1Step At A Time Daycare in the Lauderdale County litigation. (Ex. B). Travelers is presently defending Garner in the Lauderdale County litigation under the provisions of the Homeowners Policy, but is doing so pursuant to a reservation of rights.

In Count I of the Petition, Travelers asserts there is no coverage under Garner's homeowners policy because the claims and damages asserted against Garner are excluded from coverage by the "Business" exclusion to the policy. (Doc. 1, Petition for Declaratory Judgment).

In response to the summary judgment motion, Maple Garner and 1 Step At A Time assert that Travelers is not entitled to summary judgment because the business exclusion is inapplicable since Garner did not receive $2000 or more in total compensation in the 12 months prior to the occurrence and because J.F.'s injuries did not occur in connection with the business of 1 Step At A Time daycare. (Doc. 32, Garner's Opposition to Summary Judgment; Doc. 33, Frost's Opposition to Summary Judgment).

## SUMMARY JUDGMENT STANDARD

Plaintiff has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. (Doc. 27, Motion for Summary Judgment). According to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56(a). Plaintiff, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A genuine issue of material fact is shown when the non-moving party produces evidence so that a reasonable fact-finder could return a verdict in its favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. In reviewing whether the non-moving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter; the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted). However, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). A "mere scintilla of evidence" in support of the non-moving party also cannot overcome a motion for summary judgment. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

**DISCUSSION**

The pertinent parts of Garner's Homeowners Policy are as follows:

**SECTION II - LIABILITY COVERAGES**

**COVERAGE E - PERSONAL LIABILITY**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" . . . caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. . . .

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the"occurrence" is exhausted by the payment of a judgment or settlement.

. . .

**SECTION II - EXCLUSIONS**

**A.  Coverage E - Personal Liability and Coverage F - Medical Payments to Others.**

Coverages E and F do not apply to "bodily injury" or "property damage":

. . .

**2.** Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or

operated by the "insured" or employs an "insured." This exclusion **A.2.** applies to, but is not limited to, an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business."

This exclusion **A.2.** does not apply to:

. . .

**c.** One or more activities, for which no "insured" receives more than $2000 in total compensation for the consecutive 12 months before an "occurrence" . . .

(Doc. 29-13, Plaintiff's Ex. J, at TRAV_0305, TRAV_0307).

The Travelers policy defines "Business" as follows:

**a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

**b.** Any other activity engaged in for money or other compensation, except the following:

**(1)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(2)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

> **(3)** Providing home day care services to a relative of an "insured."

(*Id.* at TRAV_0289).

Thus, according to the policy, there is no coverage where the damages arise out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured," whether or not the "business" is owned or operated by the "insured" or employs an "insured," unless the "insured" received no more than $2000 in total compensation from the "business" for the consecutive 12 months before an "occurrence."

It is undisputed that Garner has been licensed by the Alabama Department of Human Resources (DHR) to operate a child care facility and has operated 1 Step At A Time daycare for in excess of 15 years. (Doc. 29-5, Plaintiff's Ex. E, Garner Depo., at 12). She operated this daycare as a sole proprietorship. (*Id.* at 19). During that time, Garner has maintained her license with DHR and had a number of children under her care, including J.F. and her brother, D.F. During J.F.'s enrollment at Garner's daycare facility, Frost paid for J.F.'s care either directly or with the assistance of the State of Alabama through a stipend. (Doc. 29-16, Plaintiff's Ex. L).

Thus, it is clear that Garner operated 1 Step At A Time (1 Step) as a "business" as that term is defined under the policy. If the activity that resulted in the injury to J.F. either arose out of *or* was in connection with this business, coverage is excluded.

The undisputed facts reflect that J.F. had been enrolled as a day care student at 1 Step from February 11, 2013, until withdrawn on September 13, 2014, after the occurrence that resulted in J.F.'s injury on September 2, 2014. (Plaintiff's Ex. L). Garner admitted that, but for J.F.'s enrollment at 1 Step, J.F. would not have been on a field trip with her on September 2, 2014. (Plaintiff's Ex. A, Garner Depo., at 137-38).

Frost brought her daughter, J.F., to 1 Step and signed her in for child care services on the morning of September 2, 2014. Frost also electronically recorded J.F.'s attendance at 1 Step on that day through the use of an electronic attendance system maintained by the State. (Plaintiff's Ex. B).

When Frost arrived with J.F., Garner represented to Frost that she would be conducting a field trip to the library and asked Frost for permission to allow J.F. to go. (Plaintiff's Ex. D, Brandy Frost Depo., at 24). Frost verbally granted permission. (*Id.*). Garner left 1 Step in the daycare van at approximately 9:30 a.m. (Plaintiff's Ex. A, Garner Depo., at 69). After leaving 1 Step, Garner went to her home intending to pick up some math papers for children at 1 Step before proceeding to the library.

(Plaintiff's Ex. E, Garner Depo., at 41; Plaintiff's Ex. A, Garner Depo., at 83-84). It was while Garner and J.F. were at Garner's residence that J.F. was attacked and injured by the dog, which belonged to Garner's daughter.

In cases involving insurance coverage regarding the use of a motor vehicle, the phrase "'arising out of' are words of much broader significance than 'caused by,' They are ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from,' or, in short, 'incident to, or having connection with,' the use of the car." *Red Ball Motor Freight v. Employers Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir. 1951).[1]

According to the Eleventh Circuit,

> Courts have consistently held that but-for causation is enough to constitute "arising out of." In the course of interpreting Alabama law, the court in *Davis Constructors & Eng'rs, Inc. v. Hartford Acc. & Indem. Co.*, 308 F.Supp. 792 (M.D.Ala. 1968) construed similar language to include an accident where the indemnitee's negligence was the sole cause. *Id.* at 795. Courts generally interpret "arising out of" in this broad sense. *See Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 498 (5th Cir. 2000) (collecting cases).

*Twin City Fire Ins. Co., Inc. v. Ohio Cas. Ins. Co., Inc.*, 480 F.3d 1254, 1264 (11th Cir. 2007).

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) *(en banc),* the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

It is clear that "but-for" J.F.'s enrollment and attendance at 1 Step At A Time daycare on the date of the incident, she would not have been with Garner at the location where the attack occurred.  It is clear that the incident "arose out of," that is, it "flowed from," "was incident to," or "had connection with" the business of 1 Step daycare.[2]

Garner was in the business of providing daycare for compensation.  J.F. was one of the children to whom she provided this service.  On the day of the incident, J.F. was signed into the daycare and left with Garner for the alleged purpose of going on a field trip to the library.  While on the way to the library, Garner stopped at her residence to pick up math papers for children at the daycare, which is also an action related to the business.

Defendant Frost argues that, when Garner arrived at her home, she was no longer engaged in work activities, stating further that "at the exact moment of the occurrence, when she completely abandoned J.F. on her front steps to gain entry to her home, Garner was not engaged in *any* child care related activity." (Doc. 33, Brief

---

[2] Plaintiff asserts that the term "in connection with" expands the excluded coverage even further than that excluded by damages "arising out of" the operation of the business. (Doc. 35, Plaintiff's Reply at 14).  While plaintiff cites several cases from other states to support this argument, in this case it is a distinction without a difference. J.F.'s injuries clearly arose out of her entrustment into Garner's daycare business.  It appears that the injuries also occurred "in connection with" the operation of that business. However, in this case, they are one and the same thing.

of B. Frost, at 11). However, this is the very nature of the cause of action. That is, it is alleged that Garner failed to supervise J.F. and, as a result, she was injured. The failure to supervise implies a duty to supervise and that duty, at least in part, arose from her assumption of that duty as a provider of daycare services for J.F. In fact, the exclusion states, in part, that it applies to an act or omission "involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the 'business.'" Thus, even assuming Garner took J.F. to her residence without permission and in violation of regulations relating to the operation of a daycare business, it does not change the fact that she had a duty, based on the nature of her business, to properly supervise J.F. Thus, the injury to J.F. arose from or was in connection with the operation of 1Step, and the resulting damages are excluded from coverage under the policy.

    Defendants also argue that an exception contained in the business exclusion applies because Garner never realized any profit or received a salary from her business in the 12 months preceding the loss.

    Exception A.2.c. to the business exclusion preserves coverage for "[o]ne or more activities, for which no 'insured' receives more than $2000 in total compensation for the consecutive 12 months before an 'occurrence.'" (Plaintiff's Ex. J at TRAV_0305-TRAV_0307).

Defendant operated 1Step as a sole proprietorship business. "Alabama law makes no distinction between an individual and a sole proprietorship operated by an individual. They are considered the same for legal purposes." *Carolina Cas. Ins. Co. v. Williams*, 945 So.2d 1030, 1035 (Ala. 2006) (citing *Clardy v. Sanders*, 551 So.2d 1057, 1059-60 (Ala. 1989) (recognizing that an individual who operates a sole proprietorship is not a separate legal entity from the sole proprietorship)). Furthermore, Garner's tax returns reflect that the entirety of 1 Step's income and losses are exclusively attributable to her. Income is taxed to the person who earns it. *Commissioner v. Culbertson*, 337 U.S. 733, 739-40, 69 S.Ct. 1210, 1212-13, 93 L.Ed. 1659 (1949).

Defendants argue that, because Travelers denied coverage to 1 Step on the ground that it was not an insured under Garner's homeowners policy, Travelers cannot now argue that the two are the same. However, this is simply not the case. Whether Garner and 1 Step are one and the same for tax purposes has nothing to do with a determination of whether Garner's sole proprietorship is covered by her homeowners policy. It is not. However, even if 1 Step were an insured under the Travelers policy, there would still be no coverage of this incident due to the business exception. In either case, the income received by 1 Step is attributable to Garner. 1 Step's gross receipts in the twelve months preceding the incident were well in excess

of the $2000 threshold. The "total compensation" received by Garner and 1 Step may have been offset by operating losses for tax purposes, but the fact that she did not make a profit does not negate the fact that she received "total compensation" for her daycare services in an amount in excess of $2000. Therefore, the exception to the exclusion is inapplicable.

## CONCLUSION

Based on the evidence presented and the arguments of the parties, the Court finds that no genuine issue of material fact exists and that Travelers is entitled to judgment as a matter of law. Therefore, plaintiff's motion for summary judgment is due to be granted. Furthermore, the Court finds that Travelers owes no duty to defend Garner under the policy, and no coverage exists for the claims and damages of Brandy Frost and J.F. A separate order will be entered accordingly.

DONE this 22nd day of November, 2016.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE